692 S.E.2d 166 (2010)
STATE of North Carolina
v.
Waddell Johnson HOPPER, Jr., Defendant.
No. COA09-1211.
Court of Appeals of North Carolina.
April 20, 2010.
*167 Attorney General Roy Cooper, by Assistant Attorney General J. Joy Strickland, for the State.
S. Hannah Demeritt, Durham, for defendant-appellant.
HUNTER, Robert C., Judge.
Defendant Waddell Johnson Hopper, Jr. appeals pursuant to N.C. Gen.Stat. § 15A-979(b) (2009) from an order denying his motion to suppress. Defendant contends that the police officer lacked reasonable suspicion to conduct a traffic stop and thus the evidence seized during the stop is the product of an unconstitutional search. We conclude that the police officer had reasonable suspicion that defendant committed a traffic violation supporting the traffic stop. We, therefore, affirm.

Facts
On 28 April 2008, Officer T.S. Mabe of the Winston-Salem Police Department was on routine patrol in Piedmont Circle, an apartment complex in Winston-Salem, North Carolina. Piedmont Circle, also the name of a street in the complex, "goes around some inner apartments, and then there's some outer apartments on the other side of the circle[.]" Corporal Mabe was contacted by investigators in the police department's narcotics unit and was told that defendant, who was driving in front of him in a white Chevrolet SUV, was driving with a revoked license.
At the time of the call from the narcotics officers, it was "raining excessively heavy" and Corporal Mabe needed his windshield wipers on their highest setting to see out of his front windshield. Corporal Mabe saw defendant's white SUV in front of him and *168 noticed that defendant did not have his taillights on despite the heavy rain. Corporal Mabe activated his blue lights and siren and stopped defendant's car. After Corporal Mabe stopped defendant's car, the narcotics officers arrived at the scene. Defendant was cited for failing to have taillights in proper working order. During the traffic stop, defendant's vehicle was searched and the police found approximately 10 grams of marijuana, drug paraphernalia, and a 9mm handgun. Defendant was arrested and charged with possession of marijuana with the intent to sell or deliver, possession of drug paraphernalia, carrying a concealed weapon, and possession of a firearm by a felon.
Defendant filed a pre-trial motion to suppress the evidence seized pursuant to the traffic stop on the ground that Corporal Mabe did not have reasonable suspicion to stop defendant's vehicle. After conducting a hearing on 4 May 2009, the trial court entered an order on 7 May 2009, in which it concluded that Corporal Mabe had reasonable suspicion to conduct the traffic stop based on defendant's failure to have his taillights on while driving in the rain. Consequently, the trial court denied defendant's motion to suppress and defendant pled guilty to all charges, expressly reserving his right to appeal from the denial of his motion to suppress. The court consolidated the offenses into one judgment and sentenced defendant to a presumptive-range term of 16 to 20 months imprisonment. Defendant timely appealed to this Court.

Discussion
Defendant argues that the trial court erred in denying his motion to suppress. In reviewing the denial of a motion to suppress, the appellate court determines whether the trial court's findings of fact are supported by competent evidence and whether those findings, in turn, support the court's conclusions of law. State v. Cooke, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). Where, as here, the defendant does not challenge the findings of fact on appeal, they are binding on appeal, and "the only issue before [the appellate court] is whether the [trial court's] conclusions of law are supported by [its] findings, a question of law fully reviewable on appeal." State v. Campbell, 359 N.C. 644, 662, 617 S.E.2d 1, 13 (2005), cert. denied, 547 U.S. 1073, 126 S.Ct. 1773, 164 L.Ed.2d 523 (2006).
The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. Traffic stops are permitted under the Fourth Amendment if the officer has "`reasonable suspicion' to believe that a traffic law has been broken." State v. Styles, 362 N.C. 412, 415, 665 S.E.2d 438, 440 (2008) (quoting United States v. Delfin-Colina, 464 F.3d 392, 396 (3d Cir.2006)). Reasonable suspicion requires that "[t]he stop . . . be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by [the officer's] experience and training." State v. Watkins, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994) (citing Terry v. Ohio, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968)).
Reasonable suspicion is a less demanding standard than probable cause, State v. Barnard, 362 N.C. 244, 247, 658 S.E.2d 643, 645, cert. denied, ___ U.S. ___, 129 S.Ct. 264, 172 L.Ed.2d 198 (2008), and only requires a "minimal level of objective justification, something more than an `unparticularized suspicion or hunch[,]'" State v. Steen, 352 N.C. 227, 239, 536 S.E.2d 1, 8 (2000) (quoting United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1, 10 (1989)), cert. denied, 531 U.S. 1167, 121 S.Ct. 1131, 148 L.Ed.2d 997 (2001). "A court must consider `the totality of the circumstances the whole picture' in determining whether a reasonable suspicion to make an investigatory stop exists." Watkins, 337 N.C. at 441, 446 S.E.2d at 70 (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629 (1981)).
Here, the trial court found:
4) It was raining hard and Corporal Mabe had to put his windshield wipers on the highest setting so that he could see out the front windshield of his patrol car.
5) When Corporal Mabe pulled behind the defendant's white SUV on the road known as Piedmont Circle, he observed that the defendant's vehicle did not have its taillights *169 on as required by G.S. 20-129 at a time when Officer Mabe believed that the defendant's windshield wipers were operating.
6) Corporal Mabe believed Piedmont Circle was a public road.
7) Corporal Mabe issued the defendant a citation for failing to have taillights in proper working order pursuant to G.S. 20-129.
Based on its findings, the trial court concluded that "Piedmont Circle is a public road or highway within the meaning of G.S. 20-129"; that "Corporal Mabe reasonably believed that the defendant was required to have his taillights operating under the given weather conditions"; and that "Corporal Mabe had reasonable articulable suspicion to stop the defendant's vehicle for failing to have taillights in proper working order." Consequently, the trial court determined that evidence seized pursuant to the traffic stop was "lawfully obtained" and denied defendant's motion to suppress.
Defendant contends that Corporal Mabe could not, as a matter of law, have had reasonable suspicion to stop him on Piedmont Circle for violating N.C. Gen.Stat. § 20-129 (2009), which provides in pertinent part that "[e]very vehicle upon a highway within this State" is required to have its headlights and taillights on
[a]t any . . . time when windshield wipers are in use as a result of smoke, fog, rain, sleet, or snow, or when inclement weather or environmental factors severely reduce the ability to clearly discern persons and vehicles on the street and highway at a distance of 500 feet ahead, provided, however, the provisions of this subdivision shall not apply to instances when windshield wipers are used intermittently in misting rain, sleet, or snow.
N.C. Gen.Stat. § 20-129(a)(4). In turn, N.C. Gen.Stat. § 20-4.01(13) (2009), provides that "[t]he terms `highway' and `street' and their cognates are synonymous[,]" and include "[t]he entire width between property or right-of-way lines of every way or place of whatever nature, when any part thereof is open to the use of the public as a matter of right for the purposes of vehicular traffic." Because, defendant argues, Piedmont Circle is not a public "highway" or "street," he was not required to have his taillights on while driving in the rain on 28 April 2008.
Even assuming, without deciding, that Piedmont Circle is not a public street, defendant's argument fails. "The fact that an officer may be factually mistaken as to the existence of a traffic offense does not render the stop illegal; rather, `the only question is whether [the officer's] mistake of fact was reasonable.'" United States v. Ellington, 396 F.Supp.2d 695, 699 (E.D.Va.2005) (quoting United States v. Chanthasouxat, 342 F.3d 1271, 1276 (11th Cir.2003)). As the United States Supreme Court has explained: "[W]hat is generally demanded of the many factual determinations that must regularly be made by agents of the government . . . is not that they always be correct, but that they always be reasonable." Illinois v. Rodriguez, 497 U.S. 177, 185, 110 S.Ct. 2793, 2800, 111 L.Ed.2d 148, 159 (1990). "An officer's mistake of fact may provide the objective basis for reasonable suspicion or probable cause under the Fourth Amendment because of the intensely fact-sensitive nature of reasonable suspicion and probable cause determinations." Chanthasouxat, 342 F.3d at 1276. Thus, "an officer's mistaken assessment of facts need not render [the officer's] actions unreasonable because what is reasonable will be completely dependent on the specific and usually unique circumstances presented by each case." Id. at 1277.
Here, Corporal Mabe testified at the suppression hearing that he regularly patrolled Piedmont Circle as part of his police duties. He stated that the Piedmont Circle apartments were property of the City of Winston-Salem and that the street Piedmont Circle, which goes through the apartment complex, was a "public road[.]" Corporal Mabe also indicated that he saw other cars parked along Piedmont Circle on 28 April 2008. On cross-examination, defense counsel showed Corporal Mabe photographs of "No [T]respassing" signs posted at the entrance of the Piedmont Circle apartment complex. Defendant, however, did not present any evidence indicating whether the no trespassing signs *170 related to Piedmont Circle, the road, or Piedmont Circle, the apartment complex.
Corporal Mabe stated that it was raining so hard on 28 April 2008, that he had his windshield wipers on their highest setting in order to see out of his front windshield. After spotting defendant's SUV in front of him, he drove "[l]ess than two car lengths" behind defendant, going approximately 10 miles an hour. Corporal Mabe saw that defendant's taillights were not operating although he believed defendant's windshield wipers were on. Believing that Piedmont Circle was a public road and that defendant was required to have his taillights operating while his windshield wipers were on, Corporal Mabe stopped defendant for violating N.C. Gen.Stat. § 20-129(a)(4).
While we assume for the sake of argument that Corporal Mabe mistakenly believed that Piedmont Circle was a public road, we conclude that, considering the totality of the circumstances, Corporal Mabe reasonably believed that it was a public road for purposes of N.C. Gen.Stat. § 20-129(a)(4) and that, under the weather conditions at the time of the stop, defendant was required to have his taillights on while his windshield wipers were in use. See United States v. Cashman, 216 F.3d 582, 587 (7th Cir.2000) ("The propriety of the traffic stop does not depend . . . on whether [defendant] was actually guilty of committing a traffic offense. . . . The pertinent question instead is whether it was reasonable for [the officer] to believe that [defendant committed a traffic offense]."); United States v. Fowler, 402 F.Supp.2d 1338, 1340-41 (D.Utah 2005) (concluding that trooper had reasonable suspicion that vehicle equipment violation occurred when light on back of vehicle did not turn off upon deactivation of brake and traffic stop thus did not violate Fourth Amendment, despite the fact that the light in question was a fog light rather than a brake light and even though trooper believed that it was a state law, rather than a federal law, that required taillights to be activated upon application of brakes); State v. Gwyn, 103 N.C.App. 369, 371-72, 406 S.E.2d 145, 146 (holding that although North Carolina officer's stop of defendant in Virginia was illegal, it was not unreasonable "since the officer did not know that defendant crossed the state line before stopping his truck" for traffic violation), disc. review denied, 330 N.C. 199, 410 S.E.2d 498 (1991). Thus, Corporal Mabe's reasonable albeit assumed to be mistakenbelief did not render the stop unconstitutional. As the trial court's findings support its conclusion that Corporal Mabe had reasonable suspicion that defendant had committed a traffic violation, we affirm the trial court's order denying defendant's motion to suppress.
Affirmed.
Judges CALABRIA and HUNTER, ROBERT N., JR. concur.